# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

MARCUS ISAIAH CLANCY,      )
                          )
    Petitioner,      )
                          )
                          )   **Case No. CIV-12-434-R**
v.                        )
                          )
MIKE ADDISON,            )
                          )
    Respondent.      )

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing through counsel, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) (Petition) and a Memorandum in Support of Petition for Writ of Habeas Corpus. (ECF No. 1-1) (Petitioner's Brief). United States District Judge David L. Russell has referred this case for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). Respondent has filed a Response (ECF No. 12), and Petitioner has filed a Reply (ECF No. 18). The undersigned recommends the Petition be **DENIED**.

## I. BACKGROUND

### A. Procedural Background

Petitioner was convicted of Murder in the First Degree (Child Abuse Murder) after a jury trial in the District Court of Oklahoma County, Case No. CF-2007-5057. He was sentenced to life imprisonment. Petitioner appealed his conviction to the Oklahoma Court of Criminal Appeals (OCCA), raising the same issues he now raises in this habeas action: (1) his Sixth and Fourteenth Amendment right to confront witnesses against him

was violated; (2) improper opinion evidence from the detective who investigated the murder invaded the province of the jury, resulting in a denial of due process and depriving Petitioner of a fair trial; (3) introduction of evidence of alleged "bad acts" deprived Petitioner of his federal due process and a fair trial; (4) judicial misconduct deprived Petitioner of his federal due process right to a fair trial; (5) prosecutorial misconduct deprived Petitioner of his federal due process right to a fair trial; (6) the trial court committed Fifth Amendment error by admitting a portion of Petitioner's statement to the police made without the benefit of *Miranda* warnings; and (7) the evidence was insufficient to sustain a conviction. The OCCA denied Petitioner's appeal in Case No. F-2009-628. Petitioner then timely filed the instant Petition for Writ of Habeas Corpus.

**B. Factual Background**

The OCCA summarized the facts of the case as follows:

> Appellant was convicted of intentionally inflicting physical injuries on five-year-old Declan Stewart, which caused his death. At the time, Appellant was in a relationship with Declan's mother, Janet Stewart, and the three lived in the same home. At trial, there was no dispute that the injuries were intentionally inflicted during a timeframe of about 15-30 minutes on the afternoon of August 11, 2007. Janet Stewart left Declan in Appellant's care while she went to the store for groceries. She returned a short time later, and testified that when she went into Declan's room to check on him, she found him unconscious on the floor, exhibiting signs of severe brain injury. The State argued that Appellant had motive and opportunity to injure Declan while Janet Stewart was at the store. The defense argued that Janet Stewart was equally capable of inflicting the injuries, and that she had an opportunity to do so when she returned from the store.

(ECF No. 1-2:2). These factual findings are presumed to be correct. Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C § 2254(e)(1).

## II. STANDARD OF REVIEW

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 98-99 (2011); *see also Johnson v. Williams*, ___ U.S. ___, 133 S. Ct. 1088, 1096 (2013) (where state court addresses some, but not all, of the federal claims, a federal habeas court must presume the state court adjudicated all claims on the merits).

A petitioner is entitled to federal habeas relief only if the State court's merits-based adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). This standard "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice system, not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 101-102. This Court first determines "whether the principle of federal law on which the petitioner's claim is based was clearly established by the Supreme Court at the time of the state court judgment." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006); *see also Hooks v. Workman*, 689 F.3d 1148, 1163 (10th Cir. 2012). "Clearly established law" consists of Supreme Court holdings in cases where the facts are similar to the facts in the

petitioner's case. *See House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If clearly established federal law exists, a federal habeas court must then consider whether the state court decision was contrary to or an unreasonable application of that clearly established federal law. *See Bland*, 459 F.3d at 1009. "A decision is 'contrary to' clearly established federal law . . . if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts . . . materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from the result reached by the Supreme Court." *Id.* (quotations omitted) (alterations in original). "As a condition for obtaining federal habeas relief . . . a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. 101-103.

### III.    ANALYSIS

#### A. Petitioner's Rights under the Sixth and Fourteenth Amendments

In this case, Petitioner sought to introduce evidence of, or at least cross-examine Janet Stewart about, injuries previously sustained by Declan while in her care, and her loss of custody of Declan for some 18 months. The OCCA summarized the excluded evidence as follows:

> The evidence in question consisted of various injuries the
> child had sustained over a period of several years.
> Ultimately, the Department Of Human Services removed the
> child from the home for about 18 months; about a month
> after his return, he was dead. We have reviewed the details
> of each of the prior injuries. Some were relatively minor

(e.g., small laceration to the scalp allegedly caused by falling onto furniture). The more serious and/or suspicious injuries (e.g. severe bruise to the scrotum) occurred after the child and his mother had begun living with Appellant. Interestingly, the State had originally intended to present most of this same evidence itself, to show that Appellant was more likely the perpetrator of the fatal injuries; however, the prosecutor ultimately concluded he could not prove by "clear and convincing evidence" that Appellant had inflicted any of the prior injuries. *See Burks v. State*, 1979 OK CR 10, 594 P.2d 771. Despite the suspicious nature of the child's history as a whole, the proffered evidence simply does not show whether any particular past injury was intentionally inflicted, much less who inflicted it. The fact that the child was removed from the home for a period of time may reflect on the mother's fitness as a caregiver and protector, but it does not tend to make it any more or less probable that either she or Appellant committed any particular criminal act.

(ECF No. 1-2:3 n.1).

The Sixth Amendment to the United States Constitution and the Due Process Clause of the Fourteenth Amendment guarantee the fundamental rights of a person accused of a crime:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; *to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor,* and to have the Assistance of Counsel for his defense.

U.S. Const. amend. VI (emphasis added). A defendant's right to cross-examine witnesses against him is guaranteed by the Sixth Amendment, *see Rock v. Arkansas*, 483 U.S. 44, 51 (1987), but that right is not without limits. "At a minimum, a defendant is limited to presenting relevant evidence, which is evidence having 'any tendency to

make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *United States v. Montelongo*, 420 F.3d 1169, 1173 (10th Cir. 2005) (citing *United States v. Markey*, 393 F.3d 1132, 1135 (10th Cir. 2004). *See also*, *United States v. Solomon*, 399 F.3d 1231, 1239 (10th Cir. 2005) ("Simply stated, a criminal defendant does not have a constitutional right to present evidence that is not relevant and not material to his defense.").

The trial court excluded the proffered evidence under Rule 2404(b) of the Oklahoma Evidence Code:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

Okla. Stat. Ann. tit. 12, § 2404(B).

The Supreme Court of the United States has recognized and considered the tension between a criminal defendant's Sixth Amendment right to present a complete defense and rules of evidence prohibiting admission of evidence aimed at discrediting witnesses.

In *Crane v. Kentucky*, 476 U.S. 683 (1986), the Court reversed the petitioner's state court conviction because the trial court's exclusion of evidence describing the circumstances surrounding the petitioner's confession deprived the petitioner of his

fundamental right to a fair opportunity to present a defense.[1] The petitioner in *Crane* had sought to introduce testimony describing the length of his interrogation by police and the manner in which it was conducted, hoping to demonstrate that his resulting confession was not reliable and should not be believed. This evidence was the crux of the petitioner's defense. The prosecutor argued the evidence in question was relevant only to the voluntariness of the confession, a legal issue previously decided by the trial court. The Supreme Court disagreed:

> Whether rooted directly in the Due Process Clause of the Fourteenth Amendment . . ., or in the Compulsory Process or Confrontation clauses of the Sixth Amendment . . ., the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense…. We break no new ground in observing that an essential component of procedural fairness is an opportunity to be heard….That opportunity would be an empty one if the State were permitted to exclude competent, reliable evidence bearing on the credibility of a confession when such evidence is central to the defendant's claim of innocence. In the absence of any valid state justification, exclusion of this kind of exculpatory evidence deprives a defendant of the basic right to have the prosecutor's case encounter and survive the crucible of meaningful adversarial testing.

*Id.* at 690-691. (internal quotations and citations omitted). Thus, the right to present a complete defense is well grounded in Supreme Court law.[2]

---

[1] *See also Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) ("Few rights are more fundamental than that of an accused to present witnesses in his own defense[,]" and exclusion of critical defense evidence by the trial court denied petitioner "a trial in accord with traditional and fundamental standards of due process."

[2] The Supreme Court ultimately remanded the case to the State court to determine whether the trial court's error were harmless. *Id.* 691-692. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986) (constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to harmless-error analysis).

More recently, the Court considered whether, and under what circumstances, the exclusion of third-party guilt evidence—the type of evidence at issue in the instant case—violates a criminal defendant's Constitutional right to present a defense. *See Holmes v. South Carolina*, 547 U.S. 319 (2006). The petitioner in *Holmes* had been convicted and sentenced to death by a South Carolina State court for the murder, first-degree burglary, first-degree criminal sexual conduct, and robbery of an 86-year-old woman. The State had introduced strong forensic evidence against the petitioner. The petitioner had sought to introduce expert testimony indicating the forensic evidence had been contaminated and that the police had plotted to frame him. Additionally, the petitioner sought to introduce the testimony of several witnesses that another man had been in the victim's neighborhood at the time of the assault and that this third party had either confessed to committing the crimes himself, or had acknowledged petitioner's innocence.[3] Applying state court law, the trial court excluded all third-party guilt evidence. On appeal, the Supreme Court of South Carolina found no error in the exclusion of this evidence holding that "'where there is strong evidence of an appellant's guilt, especially where there is strong forensic evidence, the proffered evidence of a third party's alleged guilt does not raise a reasonable inference as to the appellant's

---

[3] At a pretrial hearing, the defendant/petitioner in *Holmes* proffered several witnesses who placed a third party, Jimmy McCaw White, in the victim's neighborhood on the morning of the assault. Four other witnesses testified at the pretrial hearing that White had either acknowledged that the petitioner was innocent or had actually admitted to committing the crimes. One witness recounted that when he asked White about the "word … on the street" that White was responsible for the victim's murder, White "put his head down and he raised his head back up and said, "well, you know I like older women." According to this witness White added that "he did what they say he did" and that he had "no regrets about it at all." *Holmes*, 547 U.S. 319 at 323.

own innocence.'" *Id.* at 324 (internal citation omitted). The Supreme Court acknowledged that state and federal rule makers have broad latitude under the Constitution to establish rules excluding prejudicial evidence against third parties in criminal trials. *Id.* The Court, quoting *Crane, supra* at 6-7, reiterated the principle that criminal defendants have a constitutional right to a meaningful opportunity to present a complete defense. *Crane*, 476 at 691-692*.* "This right" the Court wrote, "is abridged by evidence rules that infring[e] upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve." *Id.* (internal quotations and citations omitted, alteration in original). The Court recognized, however, that not all rules of evidence prohibiting introduction of defense evidence against a third party impinge on a defendant's constitutional rights.

> While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury. *See*, e.g., Fed. Rule Evid. 403; Uniform Rule of Evid. 45 (1953); ALI, Model Code of Evidence Rule 303 (1942); 3 J. Wigmore, Evidence §§ 1863, 1904 (1904). Plainly referring to rules of this type, we have stated that the Constitution permits judges "to exclude evidence that is 'repetitive ..., only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'" *Crane*, 476 U.S., at 689–690, 106 S. Ct. 2142 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 89 L.Ed.2d 674 (1986); ellipsis and brackets in original). *See also Montana v. Egelhoff*, 518 U.S. 37, 42, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996) (plurality opinion) (terming such rules "familiar and unquestionably constitutional").

*Holmes v. South Carolina*, 547 U.S. at 326-27.

As the OCCA found, the undisputed evidence at trial established that both Petitioner and Stewart had the opportunity to inflict the fatal wounds Declan sustained. As there was no forensic evidence specifically linking Petitioner or Stewart to Declan's injuries, the evidence against Petitioner was circumstantial. Through discovery, Petitioner had been provided the evidence summarized by the OCCA. As the OCCA acknowledged, the prosecutor had issued a *Burks* [4] notice before trial informing Petitioner and his counsel that evidence of previous injuries to Declan and the previous involvement of the Department of Human Services would be entered into evidence against him. Petitioner did not object to this evidence because he, too, wanted the evidence admitted at trial to support his defense that Stewart was more likely than he to have inflicted the fatal injuries. In an ironic twist, however, the prosecution withdrew the *Burks* notice on the first day of the trial, concluding the State lacked sufficient evidence to connect Petitioner to Declan's previous injuries. The trial court ruled that Petitioner could not introduce evidence of, or cross-examine Stewart about, Declan's previous injuries or about Stewart's loss of custody of Declan. The OCCA found the trial court did not abuse its discretion in excluding the character evidence against Stewart:

> As to Proposition 1, we find that the trial court did not abuse its discretion in concluding that the evidence proffered by the defense did not tend to make it more likely that Janet Stewart, rather than Appellant, inflicted the fatal injuries on the victim. 12 O.S. 2001, § 2401; *Summers v. State*, 2010 OK CR 5, ¶ 67, 231 P.3d 125, 147 (a defendant should be allowed to present evidence that someone else committed the crime, as long as it is "more than mere suspicion and innuendo"). Presentation of the evidence proffered by the

---

[4]   *Burks v. State*, 594 P.2d 771 (Okla. Crim. App. 1979) (requiring notice be given to a defendant against whom the State intends to introduce "other crimes" evidence).

> defendant would have confused the issues before the jury.
> 12 O. S. Supp. 2003, §2403; *Warner v. State*, 2006 OK CR
> 40, ¶¶ 29 – 31, 140 P. 3d 838, 861 – 82.

(ECF No.1-2:3-4).

The rule of evidence relied upon by the trial court in the instant case is the type of "well-established rules of evidence" that "permit[s] trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury" described by the Supreme Court in *Holmes*. *See* e.g. Rule 404(b) Federal Rules of Evidence ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). The rule upon which the trial court relied to exclude the third-party guilt evidence in this case is neither arbitrary nor disproportionate to the ends it is asserted to promote. Moreover, the rule serves the legitimate purpose of excluding evidence that "is mere suspicion and innuendo" and evidence that would confuse the issues before the jury. Thus, the OCCA's determination regarding the suppression of third-party guilt evidence was neither contrary to, nor an unreasonable application of Supreme Court law.

## B. Challenges to the Admission of Evidence in Grounds Two and Three

In his second and third grounds for relief, Petitioner challenges evidence introduced at trial under State law. First, Petitioner argues the admission of certain opinion evidence proffered by Detective Oak, which Petitioner characterizes as improper, was so unduly prejudicial that it rendered Petitioner's trial fundamentally

unfair. Petitioner contends that any probative value of the opinion evidence was greatly outweighed by the prejudice it caused.

In his third ground for relief, Petitioner challenges testimony from several witnesses, which testimony he characterizes as "evidence of other crimes or bad acts." Because trial counsel did not object to the latter evidence, Petitioner briefly states his trial counsel was ineffective in failing to object to the introduction of the aforementioned evidence.[5]

The improper admission of evidence in a state trial warrants federal habeas relief only "if the alleged error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." *Bullock v. Carver*, 297 F.3d 1036, 1055 (10th Cir. 2002). In the event that evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief. *Payne v. Tennessee*, 501 U.S. 808, 825 (1991) (citing *Darden v. Wainwright*, 477 U.S. 168, 179-183 (1986).

### 1. Detective Oak's "Opinion" Evidence

During his testimony, Detective Oaks commented on the "significance" he gave certain statements made by various witnesses during the course of the investigation.[6] Petitioner characterizes such statements as improper "opinion" evidence. According to

---

[5] The briefly mentioned ineffective assistance of counsel claim is not well developed. But the OCCA did address the claim. Finding no error in the admission of the evidence in question, the OCCA properly determined on the merits that under the familiar test of ineffectiveness set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), that counsel could not have been ineffective in failing to object to properly introduced evidence.

[6] A detailed list of the testimony to which Petitioner objects is included in his Petition, (ECF No. 1:29-30.

Petitioner, witnesses, including police witnesses, "cannot testify as 'summary witnesses' in effect telling the jury what result to reach, or opine on the credibility of other witnesses, the believability of a witness's or defendant's statement, and the like." (ECF No. 1-1:9). Petitioner contends such evidence is "irrelevant and unfairly prejudicial." (*Id.*). Petitioner cites Oklahoma case law as well as case law from the Sixth and Seventh Circuits in support of this proposition.

The OCCA determined on appeal the trial court had not abused its discretion by permitting the police detective's testimony:

> Detective Oak interviewed several people about the child's death including appellant and the child's mother. At trial, he offered some editorial assessments of what he perceived during these interviews, and how various statements corroborated or conflicted with one another, or with the known facts. Detective Oak's perceptions were based on his first-hand observation of appellant during the interview – a recording of which was displayed to the jury – and on other evidence which was also presented to the jury. The court's instructions reminded the jury that it could accept or reject the opinions of any witness, and should determine fact issues for itself. Detective Oak's comments were not objectionable.

(ECF No. 1-2:3-4). The OCCA's determination that the challenged evidence was properly admitted at trial necessarily embodies a conclusion that the evidence was not so unduly prejudicial that it rendered the trial fundamentally unfair. Applying the deference required by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) to the OCCA's opinion, the undersigned concludes the OCCA's decision was neither contrary to, nor an unreasonable application of Supreme Court law.

## 2. Introduction of "Bad Acts" Evidence

Petitioner challenges as unconstitutional the introduction of evidence demonstrating his daughters lived with his parents. According to Petitioner, innuendo from this evidence was that Petitioner "was somehow a bad parent." (ECF No. 1:31-32); (TR. Vol. III (Prosecution's opening statement)); (TR. Vol. III, 98 (testimony of Janet Stewart)); (TR. Vol. VI, 42-45 (testimony of Susan Clancy)). Petitioner also objects to admission of Stewart's testimony that Petitioner was "mentally abusive," a "yeller" and argumentative. (ECF No. 1:32); (TR. Vol. III, 126, 139); (TR. Vol. IV, 9-10). Petitioner also challenges admission of Stewart's testimony that the victim would not communicate with Petitioner, leading Petitioner to become "frustrated." (*Id.*); (TR. Vol. III, 127-129). Other testimony to which Petitioner objects is Stewart's having testified that Declan did not want to have anything to do with Petitioner and that shortly before her son's death, Petitioner had told Stewart that if the situation with Declan did not improve, he would have to "get rid of them," meaning the relationship would end. (*Id.*); (TR. Vol. III, 127-129). Petitioner also objected to introduction of Stewart's testimony that while Petitioner was in jail, he had warned Stewart that his lawyers were going to "come after her." (ECF No. 1:32-33); (TR. Vol. III, 192).

Petitioner also challenges introduction of the videotaped forensic interviews with his daughters which include their statements that Petitioner would sometimes spank them hard and occasionally yell at them. (ECF No. 1:32); (TR. Vol. IV, 73-76, State's Exhibits 97-100). The OCCA rejected Petitioner's challenges to the admission of the testimony at issue:

> We find nothing prejudicial in testimony that Appellant had
> given custody of his daughters to his own parents; there
> was no insinuation that Appellant was a "bad parent,"
> because the jury was expressly informed that the
> arrangement was for financial reasons. Nor was it error for
> witnesses to relate that Appellant sometimes used spanking
> to discipline his own daughters, that Appellant sometimes
> had a temper, or that the day before Declan's death,
> Appellant warned Janet Stewart that their relationship would
> end if his relationship with Declan did not improve. The fact
> that Appellant's relationship with Declan was strained was
> never in dispute. The evidence complained of did not
> unfairly paint Appellant as some sort of violent abuser in the
> eyes of the jury. *Warner v. State*, 2006 OK CR 40 ¶ 70, 144
> P.3d at 869. It was not improper for Janet Stewart to testify
> that around the time of Appellant's preliminary hearing,
> Appellant warned her that his defense lawyers were
> prepared to "come after" her. This comment did not
> necessarily imply Appellant's guilt; it could equally be
> interpreted as the anger of a falsely-accused defendant.
> Because none of this evidence was objectionable, defense
> counsel was not ineffective for failing to object to it.

(ECF No. 1-2:5-6).

The OCCA's application of Oklahoma law on the admission of evidence is binding on federal habeas review, and under AEDPA's deferential standard, this court cannot say that the introduction of the challenged evidence deprived Petitioner of a fundamentally fair trial. Habeas relief is not warranted on Grounds Two and Three because the OCCA's decision was neither contrary to, nor an unreasonable application of Supreme Court law.

### 3. Judicial Misconduct and Bias

In Ground Four, Petitioner contends the trial court's adverse rulings on the admissibility of defense evidence and one comment from the trial judge demonstrate

the trial judge was biased against him. Presumably, the adverse rulings are the same adverse rulings challenged in Ground One, but Petitioner does not specifically identify them. The OCCA found no judicial bias in any evidentiary ruling. The comment was a remark by the judge in response to the prosecutor's objection to defense counsel's cross-examination of Stewart.

The OCCA described the trial judge's comment in a footnote:

> When defense counsel cross-examined Janet Stewart, he implied to the jury that she had been considered a "suspect" in Declan's death ("Did anyone tell you you were a suspect?"). When the prosecutor objected to this question, the court responded: "as far as I know, there's no evidence that she was ever a suspect. Do you want to rephrase?" We do not perceive this comment as passing on an ultimate issue in the case (whether the injuries were inflicted by appellant or Stewart); read in context, the court was simply pointing out that there was no testimony that Stewart had ever been told she was a "suspect."

(ECF No. 1-2:6 n. 3).

The Due Process Clause guarantees a criminal defendant the right to a fair and impartial judge. *In re Murchison*, 349 U.S. 133, 136 (1955). To succeed on a judicial bias claim, a petitioner must "overcome a presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larken*, 421 U.S. 35, 47 (1975). Moreover, the Supreme Court has determined that "most matters relating to judicial disqualification [do] not rise to a constitutional level." *Aetna Life Insurance Company v. Lavoie*, 475 U.S. 813, 820 (1986) (quoting *FTC v. Cement Institute*, 333 U.S. 702 (1948)). The federal courts may only intervene in state judicial process to correct wrongs of a constitutional dimension. *Bracey v. Gramley*, 520 U. S. 899, 904 (1997); *Wainwright v.*

*Goode*, 464 U.S. 78, 86 (1983). Neither of Petitioner's allegations is supported by sufficient facts to create an inference of bias. *See Aetna*, 475 U.S. at 824 (calling for recusal where state Supreme Court Justice's interest was "direct, personal, substantial, [and] pecuniary"); *In re Murchison*, 394 U. S. at 138 (finding bias where judge acting as one-man grand jury in secret hearings charged two witnesses with contempt and then presided over witnesses' contempt hearings); *Taylor v. Hayes*, 418 U.S. 488, 501-503 (1974) (finding bias where judge was subject to litigant's direct personal insults).

The OCCA's determination regarding judicial bias is neither contrary to, nor an unreasonable application of Supreme Court law. Thus, habeas relief is not warranted for this proposition.

### 4. Alleged Prosecutorial Misconduct

In his sixth ground for relief, Petitioner challenges several statements made by the prosecution in closing argument. Petitioner contends that an assistant district attorney made a direct appeal for jury sympathy for the young victim. Petitioner further contends that, when defense council objected, the trial judge stated, "I agree," presumably sustaining the objection. But the judge's comment was made outside the hearing of the jury, and the trial judge did admonish the jury. (ECF No. 1-1:27); (TR. Vol. VII, 161-168).

Petitioner also challenges the prosecutor's hypothesis, stated in closing argument, that the reason Declan had run to Petitioner the day Declan was killed was because Declan was trying to curry favor with the man who had abused him in the past. (TR. Vol. VII, 86). Petitioner correctly notes this statement was totally

unsupported by the evidence adduced at trial. (*Id.*). Petitioner contends the prosecutor's comment that Janet Stewart was "not sophisticated enough" to have killed her son and then come up with an elaborate explanation of "accident," amounted to improper vouching for the credibility of a witness. (TR. Vol. VII, 177-178).

Petitioner's final allegation of "prosecutorial misconduct" stems from the cross-examination of a defense witness, called to testify about his first-hand experience with mothers who kill their children—experience derived from his occupation as an investigator for the Medical Examiner's Office. On cross-examination, the prosecutor had the witness read from a work which included statistics demonstrating children were far more likely to be killed by a step-parent or a non-relative living in the home of a natural parent. (TR. Vol. VII, 44-52).

The Supreme Court has clearly established that a defendant is entitled to fundamental fairness in the prosecutor's conduct at trial. *See Greer v. Miller*, 483 U.S. 756, 765 (1987) ("This Court has recognized that prosecutorial misconduct may 'so infec[t] the trial with unfairness as to make the resulting conviction a denial of due process.'" (citation omitted)). But a petitioner "must show more than that 'the prosecutor's remarks were undesirable or even universally condemned.'" *Black v. Workman*, 682 F.3d 880, 907 (10th Cir. 2012) (citation omitted). That is, he must show that the "'prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (citation omitted). Petitioner states, in the alternative, that his counsel was ineffective in failing to object to all but one of these instances of alleged prosecutorial misconduct.

The OCCA considered each of Petitioner's allegations and determined the prosecutor had not exhibited misconduct:

> Appellant alleges that the prosecutor sought sympathy for the victim through one comment in closing argument. That line of argument ended, however, when the trial court sustained defense counsel's objection. Defense counsel did not ask the court to admonish the jury to disregard the comment, and we find the comment was not so egregious that it deprived Appellant of a fair trial. Appellant also claims the prosecutor stated facts not in evidence when describing possible motivations for the victim's behavior around Appellant. We find the comment to be a fair inference from the evidence. The prosecutor's argument that Janet Stewart was not "sophisticated enough" to have severely beaten her own child, and then immediately changed her demeanor to one of surprise and horror, was also a fair inference from Stewart's testimony and the facts surrounding the crime. Appellant also complains that the prosecutor improperly used statistical evidence to suggest it was improbable that Janet Stewart was the perpetrator. However, the defense opened the door to statistical evidence by presenting its own expert witness on the subject. We find no basis for relief here. In short, we find no misconduct on the part of the prosecutor which would have denied appellant a fair trial. Consequently, defense counsel was not deficient for failing to object to these comments.

(ECF No. 1-2:6-7) (citations omitted).

The OCCA's determination that the alleged instances of prosecutorial misconduct were not so egregious as to result in a fundamentally unfair trial is neither contrary to, nor an unreasonable application of Supreme Court law. Thus, Petitioner is not entitled to habeas corpus relief on this ground.

### 5. Alleged Fifth Amendment Error

Petitioner contends his Fifth Amendment right against self-incrimination was violated when a portion of his statement to Detective Oak was introduced into evidence.

Because Detective Oak never read the *Miranda*[7] warnings to Petitioner before the two talked, Petitioner contends the entire statement was inadmissible under Fifth Amendment law. The efficacy of this argument turns on whether Petitioner was "in custody" and being questioned without benefit of the *Miranda* warnings.

According to Petitioner, Detective Oak asked Petitioner if he would come to the police station. Petitioner rode to the station in the back of a police car, met Detective Oak in the lobby, was taken to an interview room, and answered Detective Oak's questions. (ECF No. 1:41). When Petitioner asked to stop the interview, no more questions were asked, and a police officer took Petitioner home. According to Petitioner, he felt he was compelled to speak to Detective Oak.

The OCCA's findings of fact regarding the circumstances leading to the Petitioner's statement to Detective Oak are as follows:

> As to Proposition 6, the trial court held a hearing on the admissibility of Appellant's statements during a police interview. Appellant accompanied an officer to the police station, and was driven home after the interview; the interviewing detective reminded Appellant that they would end the interview any time Appellant wanted to. Although the State attempted at trial to show the Appellant's version of events was not always consistent with other evidence, Appellant made no directly incriminating statements during the interview. From our review of the record, no reasonable person in Appellant's position would have felt he was in custody; therefore, *Miranda* warnings were not required. *Berkemer v. McCarty*, 468 U.S. 442 (1984). The trial court took great pains to redact portions of the interview that might be unfairly prejudicial to Appellant, including but not limited to his ultimate request to end the interview and speak with a lawyer. The trial court did not abuse its

---

[7] *Miranda v. Arizona*, 384 U.S. 436 (1966).

discretion in admitting the portions of the interview that it
did.

(ECF No. 1-2:7-8).

"Custodial interrogation," under Supreme Court law, is defined as "questioning initiated by law enforcement officers after a person has been taken into custody." *Miranda*, 384 U.S. at 444. Whether a person is "in custody," is determined by "whether there is a formal arrest or restraint on the individual's freedom of movement to the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983). In this case, the OCCA determined that Petitioner was not "in custody" when he was questioned by Detective Oaks. Petitioner had voluntarily accompanied a police officer who drove Petitioner to the police station, he was allowed to leave when he wanted to, and the police officer drove him back to his home. The OCCA's determination that Petitioner's statement was not obtained from a custodial interrogation is neither contrary to, nor an unreasonable application of Supreme Court law to the facts in the case. Habeas relief is not warranted in this case.

### 6. Sufficiency of the Evidence

Petitioner contends the evidence before the trial court was insufficient to convict him. This ground for relief is based on Petitioner's contention that the evidence adduced at trial was "wholly circumstantial" and was "largely based on innuendo and speculation, and did not foreclose all reasonable doubts respecting Mr. Clancy's guilt, even in a trial that was unfairly skewed by the trial court's unconstitutional rulings virtually eliminating petitioner's defense." (ECF No. 1-1:31).

The Due Process Clause protects a criminal defendant against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 390 U.S. 358, 364 (1970). In reviewing a habeas challenge to the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Review under *Jackson* "is sharply limited, and a court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear on the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Brown v. Sirmons*, 515 F. 3d 1072, 1089 (10th Cir. 2008) (quotations and alterations omitted).

The OCCA, relying on both *Jackson* and State court cases, denied this ground for relief:

> As to proposition 7, having reviewed the entire record, we find that a rational juror could conclude, beyond a reasonable doubt, that Appellant was the person who inflicted fatal injuries on the victim.

(ECF No. 1-2:8). The OCCA identified the correct legal standard for reviewing Petitioner's challenges to the sufficiency of the evidence. As Petitioner suggests, the evidence in this case was largely circumstantial. But the Supreme Court has held that

circumstantial evidence "is intrinsically no different from testimonial evidence." *Holland v. United States*, 348 U.S. 121, 140 (1954). The Court further explained"

> Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more.

*Id.* The OCCA's finding regarding the sufficiency of the evidence was neither contrary to, nor an unreasonable application of Supreme Court law. Accordingly, Petitioner is not entitled to habeas corpus relief on this ground.

## RECOMMENDATION

For the reasons discussed above, the undersigned magistrate judge recommends the Petition for Writ of Habeas Corpus be **DENIED**.

Petitioner is hereby advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by **May 18, 2015**, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The Petitioner is further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

**STATUS OF THE REFERRAL**

This Report and Recommendation disposes of all issues referred to the undersigned magistrate judge.

**ENTERED** on April 30, 2015.

_____

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE