# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MARCUS ISAIAH CLANCY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CIV-12-434-R |
| | ) | |
| MIKE ADDISON, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER

Petitioner, a state prisoner appearing through counsel, filed this action pursuant to 28 U.S.C. § 2254, seeking a writ of habeas corpus. Pursuant to 18 U.S.C. § 636(b)(1)(B), the matter was referred to United States Magistrate Judge Shon T. Erwin for preliminary review. On April 30, 2015, Judge Erwin issued a Report and Recommendation wherein he recommended the petition be denied on the merits. The matter is currently before the Court on Petitioner's objection to the Report and Recommendation, giving rise to the Court's obligation to conduct a *de novo* review of those portions of the Report and Recommendation to which Petitioner makes specific objection. The Court has conducted this *de novo* review, and finds as follows.

Petitioner was convicted of murder in the first degree, child abuse murder, in violation of Okla. Stat. tit. 21 § 701.7, and sentenced to life imprisonment with the possibility of parole. He was convicted in the death of D.S., the five-year old son of his girlfriend, Janet

Stewart.[1] D.S. died as a result of injuries he suffered on August 11, 2007 at the Edmond home shared by Petitioner, Janet Stewart and D.S., and occasionally by Petitioner's three daughters.

The Petition raised seven grounds for relief, each of which was addressed by Judge Erwin in the Report and Recommendation. Petitioner's objection is limited to the claim asserted in Ground One of the Petition. Therein he argues that his rights under the Sixth and Fourteenth Amendments were violated when the trial court wrongly excluded evidence he sought to introduce regarding Janet Stewart. Defendant's theory of defense was that Janet Stewart, who had previously lost custody of the victim, had both the motive and opportunity to inflict the fatal injuries.[2] He challenges the trial court's decision to exclude evidence that D.S. had been in the custody of the Oklahoma Department of Human Services for eighteen months, until approximately six weeks before his death. Petitioner contends the exclusion of this evidence, which included but was not limited to an unredacted interview with Janet Stewart, medical records and DHS records, violated his right to present a defense. He also argues that the trial court's refusal to permit counsel to inquire about the DHS placement and

---

[1] The names of the minors involved in this case have been redacted. The victim shall be referred to as D.S. Petitioner's daughters shall be referred to as T.C., H.C., and A.C., the identity of each of these persons should be evident to the parties herein.

[2] Pages 4 and 5 of the Report and Recommendation set forth the excluded evidence, as summarized by the Oklahoma Court of Criminal Appeals.

2

prior allegations of abuse during cross-examination of Janet Stewart violated his rights under the Confrontation Clause.[3]

The Court must first consider whether to apply the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), and applied by Judge Erwin, or the *de novo* standard advocated by Petitioner. Petitioner argues this Court should review his claims under a *de novo* standard because the Oklahoma Court of Criminal Appeals' decision in his case did not specifically reference federal constitutional law in affirming his conviction on direct appeal.

Generally, the AEDPA restricts the circumstances under which a federal court may grant relief to a state prisoner whose claim has already been "adjudicated on the merits in State court." 28 U.S.C. § 2254(d). In denying Petitioner appellate relief the Oklahoma Court of Criminal Appeals stated:

> As to Proposition 1, we find that the trial court did not abuse its discretion in concluding that the evidence proffered by the defense did not tend to make it more likely that Janet Stewart, rather than Appellant, inflicted the fatal injuries on the victim. 12 O.S. 2001 § 2401; *Summers v. State*, 2010 Oklahoma Cr 5, ¶ 67, 231 P.3d 125, 147 (a defendant should be allowed to present evidence that someone else committed the crime, as long as it is "more than mere suspicion and innuendo"). Presentation of the evidence proffered by the defense would have confused the issues before the jury. 12 O.S.Supp.2003, § 2403; *Warner v. State*, 2006 OK CR 40, ¶¶ 29031, 144 P.3d 838, 861-82. Appellant was not denied a fair trial by the court's exclusion of this evidence. Proposition 1 is denied.

---

[3] The Court has reviewed Court's Exhibit 1, including the attached records of the Oklahoma Department of Human Services related to the December 2005-January 2006 investigation of Ms. Stewart. As noted by the trial court, no findings or stipulations were presented to the judge at trial, and therefore, the Court is limited to the contents of the DHS reports, which do not contain any conclusions regarding who injured D.S. Tr. Vol. II, p. 238.

*Clancy v. State*, Summary Opinion, Case No. F-2009-628 (Okla.Crim.App. Nov. 19, 2010). Petitioner contends the OCCA's failure to cite to federal law precludes this Court from applying the deferential standard.

As noted by Judge Erwin in the Report and Recommendation, a state court's failure to specifically reference federal law in denying relief is not dispositive. Rather, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011)(deference applies even in the absence of a written opinion). The Supreme Court subsequently reinforced this holding, concluding in *Johnson v. Williams*, --- U.S. ---, 133 S.Ct. 1088 (2013),

> Although *Richter* itself concerned a state-court order that did not address any of the defendant's claims, we see no reason why the *Richter* presumption should not also apply when a state-court opinion addresses some but not all of a defendant's claims. There would be a reason for drawing a distinction between these two situations if opinions issued by state appellate courts always separately addressed every single claim that is mentioned in a defendant's papers. If there were such a uniform practice, then federal habeas courts could assume that any unaddressed federal claim was simply overlooked.
>    No such assumption is warranted, however, because it is not the uniform practice of busy state courts to discuss separately every single claim to which a defendant makes even a passing reference. On the contrary, there are several situations in which state courts frequently take a different course.

*Id.* at 1094. The Court finds that Petitioner herein fails to rebut the presumption that the Oklahoma Court of Criminal Appeals considered his federal claims, especially in light of the fact that the state cases upon which the Oklahoma Court of Criminal Appeals relied cited to

federal constitutional law. *See Summers v. State*, 231 P.3d 125, 147 (Okla.Crim.App. 2010)(discussing *Holmes v. South Carolina*, 547 U.S. 319 (2006) and *Warner v State*, 144 P.3d 838, 862, n. 5-7 (Okla. Crim. App. 2006)(addressing limits on cross-examination and citing *Delaware v. Van Arsdall*, 475 U.S. 673, 678-79 (1986), *Olden v. Kentucky*, 488 U.S. 277 (1988) and *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973)). Accordingly, the Court finds that the decision of the Oklahoma Court of Criminal Appeals is entitled to deference under the AEDPA.

A state prisoner is entitled to habeas corpus relief only if the State court's adjudication of his claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). Under this deferential standard:

> [i]f clearly established law exists, a state court decision is "contrary to" it only if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nonetheless arrives at a [different] result." [*Hooks v. Workman*, 689 F.3d 1148, 1163 (10th Cir. 2012)] (first and second alterations in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). A state court decision unreasonably applies federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (alterations in original) (quoting *Williams*, 529 U.S. at 413, 120 S.Ct. 1495).

*Hanson v. Sherrod*, --- F.3d ---, 2015 WL 4760511 (10th Cir. 2015). When this Court reviews a state court's decision, it is precluded from issuing the writ simply because it concludes in its independent judgment that the state court applied the law erroneously or

5

incorrectly. Rather, the Court must be convinced that the state court's application was also objectively unreasonable. *McLuckie v. Abbott*, 337 F.3d 1193, 1197 (10th Cir.2003) (citing *Williams,* 529 U.S. at 412). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)).

With regard to Petitioner's challenge to the State court's factual findings, such "findings . . . are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'" *Davis v. Ayala*, 135 S.Ct. 2187 (quoting *Rice v. Collins,* 546 U.S. 333, 338 (2006)(quoting 28 U.S.C. § 2241(e)(1))). A federal habeas court may grant a writ if it concludes a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

> "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301, 130 S.Ct. 841, 175 L.Ed.2d 738 (2010). If "reasonable minds reviewing the record might disagree about the finding in question," we defer to the state court's determination. *Brumfield v. Cain*,---- U.S. ----, 135 S.Ct. 2269, 2277, ---- L.Ed.2d ---- (2015) (quoting *Wood*, 558 U.S. at 301, 130 S.Ct. 841). But if a habeas petitioner satisfies § 2254(d)(2), we proceed to review the state court's determination de novo. *Byrd v. Workman*, 645 F.3d 1159, 1172 (10th Cir.2011).

*Sharp v. Rohling*, 793 F.3d 1216, (10th Cir. 2015)(footnote omitted). Keeping this standard in mind, the Court turns to Petitioner's claim.

> Petitioner's opening brief alleged:
>
> The OCCA's rejection of Petitioner's Sixth Amendment claim on direct appeal (denial of confrontation of Janet Stewart and other witnesses, including the right to cross-examine Stewart for motive and bias, and the denial of the right to present a full and fair defense that Stewart killed D.S.) was contrary to or an unreasonable application of, the Supreme Court precedent of *Holmes v. South Carolina, supra; Delaware v. Van Arsdall, supra; Davis v. Alaska, supra; Olden v. Kentucky, supra; Chambers v. Mississippi, supra,* and like cases. *Bell v. Cone*, 535 U.S. 685, 694 (2002); *Williams v. Taylor*, 529 U.S. 362, 405 (2000)(O'Connor, J. concurring); *Turrentine v. Mullins*, 390 F.3d 1181, 1188-89 (10th Cir. 2004); 28 U.S.C. § 2254(d)(1).

Doc. 1-1, p. 5. He argued in the brief in support of his Petition:

> In superficially rejecting the Sixth Amendment claim on direct appeal, the OCCA simply ignored the facts, and reasonable inferences from them. The excluded evidence pointing to Janet Stewart as the perpetrator of the homicide based on her past pattern of abuse against her son was anything but "speculative," or based on "innuendo." The evidence would have set the case in proper context, as opposed to the artificial and false picture presented at trial. The evidence would have clarified matters, not "confused" the jury. It was manifestly wrong for the OCCA to hold that evidence of past abuse did not point to Stewart any more than it did to Petitioner. Likewise, there was no basis whatsoever for the OCCA's conclusion [that] D.S.'s previous injuries could well have been accidental.

Doc. 1-1, p. 14. Petitioner contends the Magistrate Judge erred in concluding he was not entitled to habeas corpus relief. "It is readily apparent the OCCA's rejection of this issue was based on an unreasonable determination of the facts, a determination which the report and recommendation incorrectly endorses. 28 U.S.C. § 2254(d)(2)." Objection, p. 4.

As noted above, if "reasonable minds reviewing the record might disagree about the finding in question," the Court must defer to the state court's determination. The statement of evidence contained in the Oklahoma Court of Criminal Appeals' decision in footnote 2,

is not unreasonable in light of the different inferences that could be drawn from the evidence proffered by defense counsel at trial.[4] Contrary to Petitioner's contentions, the injuries D.S. suffered prior to Janet Stewart dating Petitioner were minor compared to the fractured skull he suffered in December 2005, after Petitioner and Janet Stewart started dating.[5] Escalating child abuse by Janet Stewart was not the sole inference that could be drawn, especially in light of the absence of evidence of any injuries to D.S. between December 2004 and November 2005, when Janet Stewart started dating the Petitioner.

The fact that the State withdrew its notice under *Burks v. State*, 594 P.2d 771 (Okla.Crim.App. 1979), does not support Petitioner's contention that the State was conceding that the injuries leading to removal of D.S. from Janet Stewart's custody were necessarily

---

[4]The Petition and accompanying briefs contain certain factual representations not supported by the record or by the citation to the record. For example, Petitioner contends the Oklahoma Court of Criminal Appeals ignored evidence proffered on his behalf, including a statement by A.C. that she witnessed Janet Stewart hit D.S. with a baton in January 2006, just before D.S. was removed from her custody. In support of this argument Petitioner cites to a Notice filed by trial counsel, indicating an intention to introduce a hearsay statement of A.C. taken on January 12, 2009. O.R. pp. 150-51. The record, however, contains no recording or actual proffer of a January 12, 2009 statement by A.C. to a forensic examiner. Furthermore, the trial transcript hints that A.C.'s alleged statements about the baton being used by Janet Stewart to hit D.S. were made when she was either three-and-one half or four years old, in January 2006.Tr. Vol. II, p. 74-75. No recording from this period is contained in the state court record provided to this Court, and it appears that counsel may have been unable to obtain the recording. *See* Tr. Vol. II, p. 74,75 ("I have evidence in the form of a videotaped interview of one of the children that saw Janet Stewart hit the child which a baton causing the injuries to the child's scrotum"); Tr. Vol. II, p. 78 (I have subpoenaed it. I have tried to get it. It has not been delivered to me yet."). Additionally, although Petitioner contends Janet Stewart failed a polygraph examination with regard to the 2006 injuries D.S. suffered, the record contains statements of counsel for both the State and Petitioner that are inconsistent with one another, but no evidence to support any contention in this regard. *See* Tr. Vol. I, p. 15 and Tr. Vol. II, p. 76.

[5] Petitioner's proffer included medical records from July and December 2004 relating to injuries suffered by D.S. This time frame pre-dates the relationship between Petitioner and Janet Stewart. On each of these visits the complaint was a laceration to the head as opposed to the skull fractures that D.S. suffered in December 2005. Based on the relative lack of medical care needed, as indicated by the absence of hospitalization or extended treatment, the Oklahoma Court of Criminal Appeals' conclusion that "some" of D.S.'s injuries were minor was not unreasonable.

inflicted by Janet Stewart. Furthermore, contrary to Petitioner's argument, the Oklahoma Court of Criminal Appeals did not erroneously conclude that Janet Stewart was "covering" for Petitioner. Rather, the language in footnote 2 opining that removal of D.S. from the home "may reflect on the mother's fitness as a caregiver and protector," indicates that Janet Stewart was not protecting her child, not that she was attempting to cover for Petitioner.[6] In short, the Court concludes the Oklahoma Court of Criminal Appeals' determination of the facts was not unreasonable with regard to the inferences to be drawn from Petitioner's proffered evidence. As such, § 2254(d)(2) does not provide Petitioner with a basis for habeas corpus relief.

The Court turns to Petitioner's legal challenges to his conviction. Although presented as a single issue in the petition, the Court prefers to address the two intertwined parts of the issue separately, considering first Petitioner's claim that he was improperly prohibited from presenting evidence of third-party guilt, specifically Janet Stewart's guilt, and second that his rights under the Confrontation Clause were violated because of the limits imposed by the trial court on his cross-examination of Janet Stewart.

The Constitution guarantees a criminal defendant "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)(internal citations and quotations omitted). A defendant's right to present relevant evidence is not unlimited. It is subject to "reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). The Supreme Court recognizes that "state and federal lawmakers have broad latitude under the

---

[6] Petitioner did not specifically identify the language of the Oklahoma Court of Criminal Appeals' decision that suggests Janet Stewart was protecting Petitioner from allegations of abuse, leaving the Court to speculate that this is the conclusion he finds offensive.

Constitution to establish rules excluding evidence from criminal trials." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006).

> Only rarely have we held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence. *See* 547 U.S. at 331, 126 S.Ct. 1727 (rule did not rationally serve any discernible purpose); *Rock v. Arkansas*, 483 U.S. 44, 61, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987) (rule arbitrary); *Chambers v. Mississippi*, 410 U.S. 284, 302–303, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) (State did not even attempt to explain the reason for its rule); *Washington v. Texas*, 388 U.S. 14, 22, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967) (rule could not be rationally defended).

*Nevada v. Jackson*, --- U.S. ---, 133 S.Ct. 1990 (2013).

The Supreme Court "has not articulated the specific set of circumstances under which a criminal defendant must be permitted to introduce evidence of potential third-party culpability. Instead the Court has found that such evidence must be admitted when, under the 'facts and circumstances' of the individual case, its exclusion deprived the defendant of a fair trial." *Wade v. Mantello*, 333 F.3d 51, 58 (2d Cir. 2003)(quoting *Chambers*, 410 U.S. at 303. The Oklahoma Court of Criminal Appeals did not reach a different conclusion than the Supreme Court on this issue of law when it cited *Summers*, which gave thorough consideration to *Holmes*. Additionally, the Oklahoma Court of Criminal Appeals did not arrive at a different decision than the Supreme Court on "materially indistinguishable" facts with regard to *Holmes* or any of the other third-party perpetrator cases cited by Petitioner. As concluded by the Report and Recommendation, the decision of the Oklahoma Court of Criminal Appeals was not contrary to Supreme Court precedent.

The Court further finds, as set forth in the Report and Recommendation, that the Oklahoma Court of Criminal Appeals's determination was not an unreasonable application of Supreme Court precedent with regard to *Holmes* or *Crane*. To establish that the OCCA's decision was unreasonable, Petitioner must establish that its decision was objectively unreasonable, that is "most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard v. Boone*, 468 F.3d 665, 671 (10th Cir. 2006). "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004). "In this case, the relevant Supreme Court law consisted of the general principles that criminal defendants must be given a meaningful opportunity to present a complete defense." *Smith v. Wilson*, 457 Fed.Appx. 752, 761 (10th Cir. Jan. 18, 2012). Here, as in *Wilson*, the state court determined the evidence was not admissible pursuant to its well-established rules of evidence.[7] In accordance with the deference due under the AEDPA, and consistent with the Report and Recommendation, the Court concludes Petitioner is not entitled to habeas corpus relief on this basis, and therefore turns to consideration of Petitioner's Confrontation Clause argument.

The Confrontation Clause guarantees an accused the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v.*

---

[7] The trial court excluded the evidence under the state version of Rule 404 in excluding the evidence. The Oklahoma Court of Criminal Appeals cited to the state equivalents of Rule 401 and 403. All are well-established rules of evidence, unlike the rules applied in *Holmes*.

*Alaska*, 415 U.S. 308, 315-16 (1974). "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)(per curium). Furthermore, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that it is repetitive or only marginally relevant." *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986). The denial of a defendant's right to confrontation is subject to harmless error review. *Id.* at 684.

Petitioner contends the Oklahoma Court of Criminal Appeals' conclusion was contrary to *Davis;* the undersigned disagrees.

> In *Davis*, the prosecution's key witness was a juvenile who, in his testimony, identified men he had encountered at the roadside near his home where law enforcement later found a stolen safe. *Davis*, 415 U.S. at 309–10, 94 S.Ct. 1105. The juvenile witness was on probation for burglarizing two cabins. *Id.* at 311, 94 S.Ct. 1105. The defense sought to cross-examine him about his potential bias—trying to shift suspicion from himself and avoid a possible probation revocation. *Id.* Relying on an Alaska statute guarding the confidentiality of juvenile records, the trial court disallowed the cross-examination. *Id.* The Supreme Court reversed, noting the difference between generally attacking credibility by introducing evidence of a prior crime versus more specifically attacking a witness's credibility by cross-examinations "directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand." *Id.* at 316, 94 S.Ct. 1105.

*Gilbert v. Morgan County Dist. Court*, 589 Fed.Appx. 902 (10th Cir. 2014). In *Davis*, unlike here, the witness at issue was subject to the power of the prosecutor, because he was on

12

probation at the time of his testimony. In *Van Arsdall* the prosecution dismissed a pending criminal charge against the witness after the witness agreed to speak with the prosecutor about the Defendant's murder case, and the state court concluded the violation required reversal because harmless error review did not exist for Confrontation Clause violations. 475 U.S. at 676. The Supreme Court concluded harmless error analysis was appropriate and remanded the matter to the state court for consideration of harmless error. A review of the record herein confirms the reasonableness of the OCCA's determination that the trial court did not deny Petitioner his constitutional rights by excluding the challenged evidence described and that the decision was not contrary to Supreme Court precedent. Although Defendant was not able to cross-examine Janet Stewart regarding D.S's time in DHS custody or about the injuries he suffered prior to that time, he was not foreclosed from conducting cross-examination nor was he prohibited from attempting to implicate Janet Stewart in D.S.'s death.

Furthermore, even if the limitations imposed on the cross examination were improper, the Court concludes any error was harmless. In reviewing for harmless error, this Court examines "the entire record to determine the error's possible effect on the jury." *Crespin v. New Mexico*, 144 F.3d 641, 649 (10th Cir. 1998). Whether an error is harmless depends on (1) the importance of the witness's testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of the actual

cross-examination; and (5) the overall strength of the State's case. *See Van Arsdall*, 475 U.S. at 684.

The Court concludes that Janet Stewart was an important witness for the prosecution. Her testimony, however, was not damning to Defendant. She did not testify about any prior abuse by Defendant of D.S. nor did she testify about any actions she witnessed on the date of his injury. Rather, she offered a timeline of events for the date. This timeline was consistent with the testimony of Petitioner's oldest child, T.C. with regard to the events of August 11. 2007 during the time before Janet Stewart discovered D.S. laying unresponsive on the floor of his room. Both Janet Stewart and T.C. indicated that when they left for Walgreens Petitioner was in D.S.'s room with D.S., asking him to come outside and play with his toy lawnmower while Petitioner mowed the lawn. Janet Stewart's testimony was also consistent with the statement of Petitioner's middle daughter, H.C., regarding Petitioner's statement to Janet Stewart on August 10, 2007, that she and her son would be forced to move out if her son did not start speaking to Petitioner. Accordingly, although important testimony, the Court concludes that her testimony was cumulative of the recorded interviews of Petitioner's children offered by the State and thus her testimony regarding the events of August 11, 2007 was corroborated by other evidence. Finally, the Court notes that the overall strength of the prosecution's case cannot be judged solely on the fact that the evidence used to convict Petitioner was circumstantial, this factor does weigh against a finding of harmlessness. *See Tuttle v. State of Utah*, 57 F.3d 879, 892 (10th Cir. 1990). Nevertheless, considering all of the evidence, the Court concludes the *Van Arsdall* factors on harmless error

weigh in favor of the State. The timeline presented by Janet Stewart was corroborated by T.C.'s video statement and the stipulation submitted by the parties.[8] Furthermore, there was testimony that the scene in D.S.'s bedroom was staged to look like he had accidentally fallen from the closet, and even assuming that Janet Stewart had time to inflict injuries on D.S., the timeline presented through Petitioner's daughter contains no provision to permit both the infliction of injuries and the staging of the bedroom. As such, the Court concludes that the Oklahoma Court of Criminal Appeals' decision with regard to Petitioner's Confrontation Clause claim was not contrary to or an unreasonable application of clearly established federal law, or that any erroneous limitation on cross-examination was harmless.

The Court has conducted its *de novo* review of the Report and Recommendation and concludes that but for Judge Erwin's conclusion that the Oklahoma Court of Criminal Appeals concluded that Ms. Stewart had the opportunity to kill D.S., the Report and Recommendation is adopted.[9] For the reasons set forth in the Report and Recommendation

---

[8] With regard to Plaintiff's contention Court's Exhibit 6 included the following:
If [T.C.] were called to testify in this trial, she would testify that, based on her memory of events of August 11, 2007, after a couple of minutes after Janet Stewart left the kitchen to check on D.S., Janet Stewart screamed out to her to go[ ] and get her father.

The stipulation further indicates that two forensic examinations were conducted with [T.C.] but that she was never specifically asked about the amount of time between when Janet Stewart left the kitchen and when she screamed. *Id.*

[9] The Court finds no statement to this effect in the opinion issued by the Oklahoma Court of Criminal Appeals on direct appeal.
  In the Petition Mr. Clancy argues that the State conceded that Janet Stewart had the opportunity to inflict the fatal wounds. The Court does not interpret the prosecutor's opening statement as a concession. Rather, he stated:
  Two people, under the evidence that you're going to see, had the opportunity *potentially* to
(continued...)

and above, Petitioner is not entitled to habeas relief on his claim under the Confrontation Clause. Accordingly, Petitioner's Petition for a Writ of Habeas Corpus is DENIED. Judgment shall be entered accordingly.

IT IS SO ORDERED this 28th day of September, 2015.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

---

[9](...continued)
do it. . . .
Time frames, you'll have to decide if Ms. Stewart had the opportunity to do it or not.
Vol. 3, p. 43. The remaining pages cited by Petitioner do not support this proposition. (Tr. Vol. VII, p. 99-100). Furthermore, review of the State's closing argument reveals its contention that given the timeline of the case, Janet Stewart could not have inflicted the deadly injuries.